IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REBECCA ADAMS SAVAGE and
OUTLAW INDUSTRIES, LLC, an
Oregon limited liability company,

        Plaintiffs,

    v.

ELEVENATE, INC., a Delaware
corporation; ELEVENATE AB, a
Swedish aktiebolag; and ETANAVELE
AB, a Swedish aktiebolag,

        Defendants.

Case No. 3:26-cv-00302-AB

OPINION & ORDER

Daniel C. Peterson
Cosgrave Vergeer Kester, LLP
900 SW Fifth Avenue 24th Floor
Portland, OR 97204

       Attorney for Plaintiffs

1 – OPINION & ORDER

Andrew Gard
Francis Torrence
Lewis Brisbois Bisgaard & Smith LLP
888 SW Fifth Avenue Suite 900
Portland, OR 97204-2025

      Attorneys for Defendants

**BAGGIO, District Judge:**

Plaintiffs Rebecca Adams Savage and Outlaw Industries, LLC bring this case against Defendants Elevenate, Inc., Elevenate AB, and Etanavele[1] AB.[2] Plaintiffs allege breach of contract, violation of Oregon Revised Statute § 646A.097, and intentional interference with contractual relations. Torrence Decl. Ex. 1 ("Compl.") ¶¶ 23–42, ECF No. 2. On March 11, 2026, Plaintiffs moved for a temporary restraining order ("TRO"). *See generally* TRO. For the following reasons, the Court denies Plaintiffs' Motion for Temporary Restraining Order.

## BACKGROUND

Defendant Etanavele AB ("EAB") is a Swedish manufacturer of ski apparel, general outdoor apparel, streetwear, accessories, and other consumer goods under the brand names "Elevenate" and "E11 . . . ." Savage Decl. ¶ 2, ECF No. 14. Defendant EAB is alleged to be the corporate parent of Defendant Elevenate, Inc. ("Elevenate")—the U.S. subsidiary of the Elevenate brand. Compl. ¶ 2; Eek Decl. ¶ 6, ECF No. 25.

In August 2016, Plaintiff Savage entered into a "Restricted Common Stock Grant Agreement" with Defendants Elevenate and EAB, whereby Plaintiff Savage was granted

---

[1] The Court notes that both parties identify typographical errors with this Defendant. Plaintiffs assert it should be "Etanevele," Pls.' Mot. TRO ("TRO") 1 n.1, ECF No. 12, while Defendants assert it should be "Etenavale," Defs.' Resp. TRO ("Defs.' Resp.") 1, ECF No. 22. The parties are directed to confer on the correct spelling of this Defendant and docket a notice with the Court.

[2] Defendants Elevenate AB and Etanavele AB are aktiebolags, which in Sweden is akin to a limited liability company or corporation in the United States. TRO 1 n.2.

350,000 shares of common stock in Defendant Elevenate "as remuneration for legal services provided in connection with the establishment of and early work on" Defendant Elevenate. Eek Decl. ¶ 3; Savage Decl. ¶ 5; Savage Decl. Ex. 1 ("Stock Agreement"), at 2, ECF No. 14-1. This represented a 5.1% ownership interest in Defendant Elevenate; Defendant EAB owned the remaining 95% interest. Savage Decl. ¶¶ 5, 11. Under the Stock Agreement, Plaintiff Savage was guaranteed to collect no less than $50,000 for her shares under certain conditions. Eek Decl. ¶ 3; Savage Decl. ¶ 5.

In December 2020, Plaintiff Outlaw—which is Plaintiff Savage's company—entered into an "Exclusive Service Agreement" with Defendants Elevenate and EAB. Savage Decl. ¶ 8; Eek Decl. ¶ 4; Savage Decl. Ex. 2 ("Service Agreement"), ECF No. 14-2. Under the Service Agreement, Plaintiff Outlaw was granted the "exclusive right to promote, market, and sell" Elevenate brand products in the United States. Savage Decl. ¶ 8. In exchange for Plaintiff Outlaw's services, Plaintiff Outlaw was to be reimbursed for all expenses, paid a yearly fixed payment, and paid commission on wholesale and retail sales. *Id.*; Defs.' Resp. 3. Under certain conditions, the Service Agreement could be terminated by either Plaintiff Outlaw or Defendant Elevenate. *See* Service Agreement 8–9.

In the fall of 2025, Defendant Elevenate AB ("Vebua") purchased all of Defendant EAB's assets, including Defendant EAB's 95% ownership interest in Defendant Elevenate. Savage Decl. ¶ 11; Eek Decl. ¶ 7. This acquisition occurred because of Defendant EAB's financial difficulties. *See* Eek Decl. ¶¶ 8–9. Defendant Vebua now operates and controls Defendants EAB and Elevenate. *See* Savage Decl. ¶¶ 12–13.

In light of Defendant Vebua's acquisition of Defendant EAB's assets, on October 21, 2025, Defendant Vebua inquired as to whether Plaintiff Savage would be willing to sell her 5.1%

3 – OPINION & ORDER

ownership interest in Defendant Elevenate. Eek Decl. ¶ 10. Defendant Vebua was considering a further acquisition of Defendant Elevenate. *Id.* During these initial discussions, Plaintiff Savage indicated that Defendant Elevenate had outstanding amounts owed to Plaintiff Outlaw. *Id.* Defendant Vebua paid those amounts on or about October 23, 2025. *Id.* The next day, Plaintiff Savage was offered $50,000 in exchange for her shares in Defendant Elevenate in addition to a six-month opportunity to work with Defendant Vebua, with the opportunity for another six-month extension. *Id.* ¶ 11.

On December 16, 2025, Plaintiff Savage informed Defendants of her acceptance of the offer to purchase her shares, contingent upon Plaintiff Outlaw receiving outstanding commission payments and expense reimbursements. *Id.* ¶ 13. Negotiations ensued, with additional outstanding payments made to Plaintiffs on January 7, 2026. *Id.* ¶ 14. On January 9, 2026, Plaintiff Savage and Outlaw accepted an offer to purchase Plaintiff Savage's shares and terminate the Service Agreement, with two additional terms. *Id.* ¶ 15; Torrence Decl. Ex. A, at 1, ECF No. 26-1. Defendants accepted the additional terms, and on January 10, 2026, Defendants emailed to Plaintiffs a Settlement and Stock Purchase Agreement and Termination of the Services Agreement. Torrence Decl. Ex. B, at 1, ECF No. 26-2; Torrence Decl. Ex. C, ECF No. 26-3 (Termination of Services Agreement); Torrence Decl. Ex. D, ECF No. 26-4 (Settlement and Stock Purchase Agreement). On January 11, 2026, however, Plaintiff Savage communicated that she was reneging on the proposed agreements. Eek Decl. ¶ 16; Torrence Decl. Ex. E, ECF No. 26-5.

In light of the unsuccessful negotiations, on January 16, 2025, both parties sent notices terminating the Service Agreement for cause. Savage Decl. ¶ 17; Eek Decl. ¶ 17; Torrence Decl. Ex. G, ECF No. 26-7 (notice sent to Plaintiffs); Torrence Decl. Ex. H, ECF No. 26-8 (notice sent

4 – OPINION & ORDER

to Defendants). This Complaint followed. Plaintiffs assert $244,384.06 in damages for breaches of the Service Agreement, $301,290.74 in damages for breaches of the Stock Agreement, and $305,290.47 in treble damages. Savage Decl. ¶ 22.

## STANDARDS

Federal Rule of Civil Procedure 65 authorizes courts to issue TROs. Fed. R. Civ. P. 65(b). The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing is held. *W. Watersheds Project v. Bernhardt*, 391 F. Supp. 3d 1002, 1008–09 (D. Or. 2019). The legal standards applicable to TROs and preliminary injunctions are "substantially identical . . . ." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The standard for a preliminary injunction is a high one: it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). To obtain a preliminary injunction, the plaintiff must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

## DISCUSSION

Plaintiffs move for a TRO prohibiting Defendants from "removing the funds owed to Plaintiffs to Sweden to further Defendants' ongoing efforts to avoid their obligations to Plaintiffs." TRO 3. Specifically, Plaintiffs seek an order:

> prohibiting Defendants from removing, injuring, destroying, selling, consigning, transferring, encumbering, converting, concealing, or otherwise disposing of any assets maintained in the State of Oregon, including the product inventory held at the warehouse located at 14601 N Bybee Lake Ct, Portland, OR 97203, aside from

5 – OPINION & ORDER

sales of product to U.S. based wholesale and retail customers in the ordinary course of business; restraining Defendants from transferring, causing to transfer, or permitting the transfer of any of Elevenate, Inc.'s assets, including payments made for purchase of products to any other party (including to Etanevele AB or Elevenate AB); and directing Defendants to deposit all proceeds of the sale of product inventory or collections of debts with the court or into a designated escrow account under the control of Plaintiff's counsel during the pendency of this case.

TRO 2. Plaintiffs argue a TRO is appropriate here because, among other things, "[i]f no action is taken . . . , any judgment Plaintiffs may obtain against Defendants will be unenforceable and uncollectable in the United States and the likelihood that Plaintiffs will ever be compensated for their damages will be virtually extinguished." TRO 15. Defendants respond that a TRO is inappropriate because, in relevant part, Plaintiffs purported irreparable harm is speculative and purely economic. Defs.' Resp. 13–14. The Court agrees with Defendants and finds that Plaintiffs have not shown they are likely to suffer irreparable harm in the absence of preliminary relief. Accordingly, the Court denies Plaintiffs' Motion for Temporary Restraining Order.

To obtain preliminary relief, a plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. This means "harm that is immediate, rather than remote or speculative." *Or. Firearms Fed'n, Inc. v. Brown*, 644 F. Supp. 3d 782, 810 (D. Or. 2022) (collecting cases). Moreover, the harm must be "harm for which there is no adequate legal remedy . . . ." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Thus, "economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *see also L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1202 ("[M]onetary injury is not normally considered irreparable.").

Here, Plaintiffs purported irreparable harm is purely economic. *See* TRO 15 (asserting as irreparable harm the inability to enforce and collect a judgment against Defendants for economic

6 – OPINION & ORDER

damages). The Court finds that such harm alone is insufficient to support a finding of irreparable harm. *See Rent-A-Ctr., Inc.*, 944 F.2d at 603; *L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1202.

Moreover, even if pure economic harm was actionable, Plaintiffs have not demonstrated that such harm is immediate. Plaintiffs' evidence is speculative at best.

Here, Plaintiffs assert that they are likely to suffer harm because:

> If no action is taken to restrain [Defendant] Vebua from removing Elevenate assets from the United States or otherwise using such proceeds for its own benefit during the pendency of this case, any judgment Plaintiffs may obtain against Defendants will be unenforceable and uncollectable in the United States and the likelihood that Plaintiffs will ever be compensated for their damages will be virtually extinguished.

TRO 15. Plaintiffs support this assertion with the declarations of Plaintiff Savage. Specifically, since fall of 2025, Plaintiff Savage asserts that Defendants have undertaken "a series of sham transactions in order to evade the existing obligations of Elevenate and EAB, including those obligations owed to Outlaw under the Service Agreement and to Savage under the Stock Agreement." Savage Decl. ¶ 10. Moreover, since Defendant Vebua acquired Defendant EAB, Defendant Vebua has moved "all of EAB's assets to Vebua, leaving EAB and Elevenate with no ability to conduct business and fulfill obligations to creditors, including Plaintiffs . . . ." Second Savage Decl. ¶ 2, ECF No. 30. Consequently, Defendant Vebua now operates and controls Defendant EAB and Elevenate and converts all their income. Savage Decl. ¶ 12. Indeed, Defendants have told Plaintiffs that Defendants EAB and Elevenate are insolvent. *Id.* ¶ 15; *see also* Second Savage Decl. Ex. 1, at 2–3, ECF No. 30-1 ("There are no assets or cash in [EAB] . . . . [EAB] will move to liquidation, and the consequence will most probably be liquidation of [Elevenate] as [it] holds no assets."). Because of this, Plaintiffs have not received timely payments of amounts owed. *See* Second Savage Decl. ¶¶ 4–7.

7 – OPINION & ORDER

But as Defendants identify, Plaintiffs' evidence is still lacking in the necessary factual support. *See* Defs.' Resp. 13. For example, although Defendants have made untimely payments to Plaintiffs, Defendants have not altogether discontinued payments. *See* Eek Decl. ¶¶ 10, 14 (payments to Plaintiffs in October 2025 and January 2026); *see also* Second Savage Decl. ¶¶ 4–7 (untimely payments). Moreover, Defendants appear to have engaged in good faith negotiations to terminate their contractual relationship with Plaintiffs. *See* Eek Decl. ¶¶ 10–16. In fact, Defendants sent to Plaintiffs finalized agreements to purchase Plaintiff Savage's shares and terminate Plaintiff Outlaw's Service Agreement as of January 10, 2026. Torrence Decl. Ex. B, at 1; *see also* Torrence Decl. Exs. C–D. But it was ultimately Plaintiff Savage who reneged on those agreements. Eek Decl. ¶ 16.

All in all, the Court cannot conclude that Plaintiffs are likely to suffer immediate, rather than remote or speculative, harm. That Defendant Vebua's acquisition of Defendant EAB has resulted in delayed payments to Plaintiffs and the transfer of Defendant EAB's assets out of the United States is insufficient to show that any potential judgment to be obtained by Plaintiffs will not be recoverable. Moreover, Defendants submit banking data showing two accounts—one maintained in New York and one global account—which, on Plaintiffs' admission, show additions of over $200,000 since litigation commenced between the parties. Pls.' Reply 18, ECF No. 28; Eek Decl. ¶ 26; *see also* Torrence Decl. Ex. K, ECF No. 26-11 (bank statements).

For these reasons, the Court finds that Plaintiffs have not shown they are likely to suffer irreparable harm in the absence of preliminary relief. Plaintiffs' harm is purely economic and speculative. Accordingly, the Court finds preliminary relief inappropriate. *See L.A. Mem'l Coliseum Comm'n*, 634 F.2d at 1202 ("[M]onetary injury is not normally considered

8 – OPINION & ORDER

irreparable."); *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury.").

## CONCLUSION

Because Plaintiffs have not shown they are likely to suffer irreparable harm in the absence of preliminary relief, one of the four essential requirements of a TRO, the Court DENIES Plaintiffs' Motion for Temporary Restraining Order [12].

IT IS SO ORDERED.

DATED this 20th day of March, 2026.

*Amy M. Baggio*
AMY M. BAGGIO
United States District Judge

9 – OPINION & ORDER